IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:16cr59 |
| | ) | |
| HUGO ALBERTO SEPULVEDA-VALENCIA | ) | |
| | ) | |
| | ) | |

FILED IN OPEN COURT
JUN 29 2016
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## STATEMENT OF FACTS

This statement of facts is submitted in support of the guilty plea to Count One of the Indictment. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A). This statement of facts contains information necessary to support the guilty plea. It is not intended to include each and every fact in the case. If the matter had gone to trial, the United States would have proven Count One of the Indictment by proof beyond a reasonable doubt of the facts set forth below.

From in or about June 2015 and continuing thereafter until on or about December 18, 2015, in the Eastern District of Virginia (EDVA) and elsewhere, the defendant, Hugo Alberto SEPULVEDA-VALENCIA (SEPULVEDA-VALENCIA), combined, conspired, confederated and agreed with other persons to distribute and possess with intent to distribute methamphetamine, a Schedule II controlled substance.

In December of 2015, the office of the Drug Enforcement Administration in McAllen, Texas was conducting an undercover investigation of a Mexican Drug Trafficking Organization (DTO) operating in Reynosa, Mexico and McAllen, Texas. On December 15, 2015, at McAllen, Texas, an unindicted co-conspirator (UCC#1), a member of the subject Mexican DTO, distributed

four kilograms of methamphetamine to an undercover (UC) law enforcement officer. The UC and another unindicted co-conspirator (UCC#2) agreed that the UC's courier would transport the four kilograms of methamphetamine to Virginia Beach, Virginia on behalf of UCC#2 for a fee of $5,000. The UC further agreed to contact UCC#2 once the UC's courier arrived in Virginia Beach, at which time UCC#2 would provide the UC with the phone number for UCC#2's accomplice. The UC would then provide that phone number to his courier who would arrange a meeting with UCC#2's accomplice in Virginia Beach to deliver the four kilograms of methamphetamine and receive the $5,000 fee.

On December 18, 2015, the UC contacted UCC#2 and advised UCC#2 that his courier would be arriving in Virginia Beach at approximately 1:00 p.m. that day. In response, UCC#2 provided the UC with an area code 956 phone number. The UC called the area code 956 phone number and spoke with UCC#2's accomplice, who was subsequently identified as SEPULVEDA-VALENCIA. During their conversation, SEPULVEDA-VALENCIA directed the UC to rent a room at the America's Best Value Inn at 5725 Northampton Boulevard in Virginia Beach where SEPULVEDA-VALENCIA agreed to meet the UC at 1:00 p.m. During a subsequent conversation, SEPULVEDA-VALENCIA indicated that he was currently staying at the America's Best Value Inn on Northampton Boulevard and that he could not leave the hotel because he was awaiting the delivery of an important package.

At approximately 4:00 p.m., the UC contacted SEPULVEDA-VALENCIA and advised him that the UC was at the Wawa at 5701 Northampton Boulevard in a red SUV. SEPULVEDA-VALENCIA agreed to meet the UC at the Wawa. SEPULVEDA-VALENCIA advised that he would be on foot and that he was wearing red pants. At approximately 4:03 p.m., law enforcement surveillance observed SEPULVEDA-VALENCIA walk from the America's Best Value Inn to the Wawa. SEPULVEDA-VALENCIA approached the UC, greeted him and entered the UC's vehicle. Inside the vehicle, SEPULVEDA-VALENCIA handed the UC a package containing approximately

$5,200 in cash. SEPULVEDA-VALENCIA informed the UC that the package contained a little extra for the inconvenience of traveling. The UC then retrieved a black backpack containing one kilogram of methamphetamine and three kilograms of an imitation controlled substance[1] from the rear hatch of the UC vehicle. The UC presented the backpack to SEPULVEDA-VALENCIA. SEPULVEDA-VALENCIA took possession of the backpack and opened it. The UC asked SEPULVEDA-VALENCIA if he wanted to open one of the packages to which SEPULVEDA-VALENCIA answered no. The UC opened the backpack, showed SEPULVEDA-VALENCIA the four packages inside and stated it was "all there." At approximately 4:10 p.m., SEPULVEDA-VALENCIA took the backpack and exited the UC vehicle.

Special Agent (SA) Pompa and Task Force Officer (TFO) Thomas with DEA-Norfolk approached SEPULVEDA-VALENCIA at the Wawa as SEPULVEDA-VALENCIA was walking away from the UC vehicle and identified themselves as law enforcement. SA Pompa asked SEPULVEDA-VALENCIA for consent to search the backpack. SEPULVEDA-VALENCIA agreed but stated that he did not know what was inside the backpack. SEPULVEDA-VALENCIA confirmed that he owned the backpack. TFO Thomas searched the backpack in SEPULVEDA-VALENCIA's presence and located the kilogram of methamphetamine and the three kilograms of imitation controlled substance. A search of SEPULVEDA-VALENCIA incident to his arrest revealed several items, including two Mexican passports and $6,501 in cash.

DEA SA Crumble advised SEPULVEDA-VALENCIA of his *Miranda* rights in Spanish. SEPULVEDA-VALENCIA advised that he had an additional kilogram of methamphetamine back at his hotel room. SEPULVEDA-VALENCIA signed a consent form authorizing agents to search

---

[1] DEA personnel replaced three of the kilograms of methamphetamine (from the original four kilogram shipment) with three kilograms of an imitation controlled substance for the controlled delivery in Virginia Beach. The three replaced kilograms, identified as Exhibits 2(a), 2(b) and 2(c), were submitted to the DEA Mid-Atlantic Laboratory for analysis. The results of the analyses are as follows: Exhibit 2(a), d-Methamphetamine Hydrochloride, 997.0 grams, 97.9 percent purity; Exhibit 2(b), d-Methamphetamine Hydrochloride, 976.6 grams, 98.8 percent purity; and Exhibit 2(c), d-Methamphetamine Hydrochloride, 1002 grams, 98.7 percent purity.

his hotel room. Upon searching SEPULVEDA-VALENCIA's room (No. 116) at the America's Best Value Inn, the agents discovered one kilogram of methamphetamine wrapped in Christmas wrapping paper inside a microwave oven. SEPULVEDA-VALENCIA advised that he was from Mexico and had traveled by bus to Virginia Beach. SEPULVEDA-VALENCIA admitted that he travels from Mexico to various locations in the United States to coordinate the transfer of drugs from couriers to distributors. SEPULVEDA-VALENCIA further admitted that he also receives at various hotels drug parcels sent to him via FedEx. SEPULVEDA-VALENCIA admitted that the methamphetamine package in his hotel room had been sent to him through FedEx. SEPULVEDA-VALENCIA admitted that he had traveled to Virginia Beach on a previous occasion in approximately late June/early July of 2015 to coordinate the delivery of a shipment of drugs.

The methamphetamine seized from the black backpack, identified as Exhibit 1, and the methamphetamine seized from SEPULVEDA-VALENCIA's hotel room, identified as Exhibit 3, were submitted to the DEA Mid-Atlantic Laboratory for analysis. The results of the analyses are as follows: Exhibit 1, d-Methamphetamine Hydrochloride, 993.7 grams, 97.5 percent purity; Exhibit 3, d-Methamphetamine Hydrochloride, 991.7 grams, 97.8 percent purity.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____
Darryl J. Mitchell
Assistant United States Attorney
Virginia Bar No. 37411
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address - darryl.mitchell@usdoj.gov

**Defendant's Signature**: After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
Defendant

**Defense Counsel's Signature**: I am Hugo Alberto Sepulveda-Valencia's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Counsel for the Defendant